IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **OSCAR BARRERA**, | * |
| Plaintiff, | * |
| v. | * Case No.: RWT 11cv2394 |
| **CORRECTIONAL MEDICAL SERVICES, INC.,** *et al.*, | * |
| Defendants. | * |

## MEMORANDUM OPINION

Oscar Barrera, a Maryland Division of Correction ("DOC") prisoner housed at Western Correctional Institution in Cumberland, Maryland ("WCI") filed a civil rights complaint under 42 U.S.C. § 1983 against Correctional Medical Services, Inc. ("CMS") and its employees Dr. Ava Joubert, Physician's Assistant Beverly Sparks, and Janet Gilmore. Barrera, who is self-represented, seeks money damages and alleges he has been denied appropriate treatment for severe pain in his right knee. ECF No. 1. Pending are a Motion to Dismiss, or in the Alternative for Summary Judgment filed by counsel for Defendants that shall be construed as a motion for summary judgment[1] (ECF No. 13), Plaintiff's opposition thereto (ECF No. 19), and Defendants' reply. ECF No. 20. For the following reasons, the dispositive motion will be granted and relief denied, and Defendants will be required to provide a supplemental status report concerning ongoing scheduled medical treatment.

---

[1] The dispositive pleading will be treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure because materials outside the four corners of the pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

## I. Appointment of Counsel

Plaintiff requests appointment of counsel. ECF No. 21. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1), is discretionary and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id*. Here, Plaintiff has been able to present his claim in a cogent fashion and the issue is not complex; thus, appointment of counsel is not warranted.

## II. Standard of Review

### a. Summary Judgment

Summary judgment is governed by Fed. R. Civ. P. 56(a) which provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis omitted). The party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has met that burden, the non-

moving party must come forward and demonstrate that such an issue does, in fact, exist. *See Matsushita Elec. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002) (citation omitted). The court must, however, also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Smith v. Ozmint*, 578 F. 3d 246, 254 (4th Cir. 2009).

 b. **Eighth Amendment**

As an inmate claiming denial of medical care in violation of the Eighth Amendment, Plaintiff must prove two elements: one objective and one subjective. The prisoner plaintiff must demonstrate that, objectively, he was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Shakka v. Smith*, 71

F.3d 162, 166 (4th Cir. 1995) (Prison officials who are charged with deliberate indifference to a serious medical need must "know of and disregard the objectively serious condition, medical need, or risk of harm"). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F. 3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). A health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Mere negligence or malpractice does not rise to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000).

### III.   ANALYSIS

#### a. Respondeat Superior

Plaintiff's complaint against CMS is based solely upon the doctrine of respondeat superior, which does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782

(4th Cir. 2004) (finding no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (finding no respondeat superior liability in a *Bivens* suit). The law in the Fourth Circuit is well established that the doctrine does not apply in § 1983 claims, even where the Defendant is a private corporation, rather than a municipality or other public agency. *See Nedd v. Corr. Med. Servs.*, Civil Action No. JFM-92-1524 (D. Md., Oct. 22, 1992), citing *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hosp.*, 774 F. Supp. 986, 990 (E.D.Va. 1991). CMS is entitled to dismissal in this case.

   b. **Medical Claims**

Plaintiff states he began to complain of severe right knee pain in January of 2010. ECF No. 1 at 3. Pain medication and physical therapy were provided. On March 9, 2011, Plaintiff stated to Defendant Sparks that Naprosyn no longer controlled his pain. ECF No. 13, Ex. B at 1. He indicated he had previous surgery on his knee but he did not know the type of surgery that had been performed. *Id.* Within a few days, Defendant Joubert completed the process to request consultation with a physiatrist. *Id*. at 2. On April 4, 2011, Plaintiff indicated that he would like to have an MRI performed on his knee. Compl. at 5.

On April 25, 2011, Plaintiff was examined by Dr. Cornell Shelton, a physician at Bon Secours Hospital ("BSH"), who recommended a cortisone injection to the knee and if necessary additional treatment, including injection with Synvisc. Defendant Joubert's notes indicate that the Synvisc[2] injection and an MRI would be requested if cortisone did not work. ECF No. 13, Ex. C. It appears cortisone was given but failed to provide significant pain relief. *Id*., Ex. F. Defendant Joubert obtained authorization for further treatment on August 9, 2011, *id*., Ex. E, and

---

[2] Synvisc an injectable medication called hyaluronan. Synvisc is typically administered as a series of three injections into the knee joint, each injection spaced about one week apart. Synvisc has been shown to help alleviate arthritis symptoms for six months, and to delay the need for knee replacement surgery. *See* http://orthopedics.about.com/cs/treatment/a/synvisc.htm (last visited March 22, 2012).

on September 8, 2011, Dr. Shelton provided Plaintiff the first of three Synvisc injections. Two additional Synvisc injections subsequently were provided by Dr. Shelton. *Id*., Ex. F. The last injection occurred on September 22, 2011, at which time Plaintiff was told to follow up in about eight weeks to see if the Synvisc injections had "kick[ed] in." *Id*. at 5-6.

On November 30, 2011, Plaintiff was examined by Nurse Practitioner Deirdre Mull, who found tenderness and swelling around the knee as well as crepitus (crackling). ECF No. 20, Ex. B. Plaintiff's medications, including glucosamine chondroitin[3] and Extra Strength Tylenol, were continued. *Id.* Given those findings, Dr. Joubert received approval, on December 6, 2011, to schedule Plaintiff for both an MRI and an orthopedic consultation. *Id*., Ex. C. The parties do not provide information as to whether the MRI and consultation have occurred.

Plaintiff fails to establish the objective or subjective component of a denial of medical care. The record before this Court indicates that the Plaintiff has been seen by medical staff on numerous occasions and has received Synvisc injections, cortisone injections, and glucosamine chondroitin. In December of 2011, Plaintiff was approved for an MRI and orthopedic consultation. Although the Plaintiff may have desired to have received an MRI earlier, he fails to demonstrate an Eight Amendment violation. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper care do not state a § 1983 claim unless exceptional circumstances are alleged."). The record indicates that exceptional circumstances are not present here. Based on Defendants' representations, the

---

[3] Glucosamine and chondroitin joint supplements are "building blocks" believed to aid in cartilage repair. *See* http://orthopedics.about.com/cs/supplements/a/glucosamine.htm (last visited March 22, 2012).

Court finds that the treatment of Plaintiff's knee problem has been appropriate and is ongoing.[4]

Given the lapse in time between the filing of dispositive motions and judicial review, counsel shall provide the Court with a status report concerning Plaintiff's most recent treatment for his condition. Accordingly, Defendants' dispositive motions shall be granted and this case closed by way of a separate Order.

Date: <u>March 23, 2012</u>                                          /s/
                                                                ROGER W. TITUS
                                                                UNITED STATES DISTRICT JUDGE

---

[4] The Court declines to address Defendants' argument (ECF No. 13 at 3-4) that Plaintiff's use of the word "negligence" in his Complaint (ECF No. 1 at 3, ¶ IV) removes this case from federal review and mandates it be addressed in the state courts subject to the Maryland Health Care Malpractice Claims Act, MD. CODE ANN., CTS. & JUD. PROC. §§ 3-2A-01 *et seq.* As the underlying constitutional claims are not established, the Court declines to exercise supplemental jurisdiction to address any state tort claims of negligence that may be raised in the Complaint.